FILED
2010 Jun-29 AM 09:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JOHNNY SAMUEL,** ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | CV 09-RRA-2109-S |
| **vs.** ) | |
| ) | |
| **UNITED STATES OF AMERICA, et.,**) | |
| **al.** ) | |
| ) | |
| **DEFENDANT.** ) | |

**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S SECOND CROSS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY, ONLY, AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/DISMISS**

Comes now the plaintiff and hereby responds to defendant's motion for summary judgment/dismiss, and moves this Court to deny said motion and grant summary judgment in favor of the plaintiff on the issue of liability, only. As grounds the plaintiff says as follows:

      **I.   RESPONSE TO MOVANT'S STATEMENT OF FACTS**

1. The Plaintiff disputes the defendant's assertion in paragraph 4 of the defendant's complaint that "The records from Dr. Lewis show plainly that she diagnosed the cuff ("fibrous sheath") of the catheter

underneath the skin of the Plaintiff's chest." The defendant has provided no expert or lay testimony that this was Dr. Lewis' diagnosis.  (Plaintiff's Exhibits 5 - 8, 13; Plaintiff's Declaration)

2.  The Plaintiff disputes the defendant's assertion in paragraph 5 that the plaintiff's administrative claim was untimely.  (Plaintiff's Declaration; Plaintiff's Exhibits 5 - 8, 13)

## II. ADDITIONAL UNDISPUTED FACTS

3.  On or around 1995-1996, Johnny Samuel was under the care of physicians at the Veteran's Administration Hospital which is an agency of the United States Government. (Defendant's Brief; Plaintiff's Declaration)

4.  On July 19, 1995, the defendant placed a Hickman Catheter Cuff (hereinafter referred to as "foreign object") inside of Mr. Samuel's body. (Plaintiff's Exhibit 1; Plaintiff's Declaration)

5.  On July 25, 1996, Dr. Martin J. Smith, MD, a resident, and Dr. Robert, his attending physician,

purportedly removed the foreign object. (Plaintiff's Exhibit 2; Plaintiff's Declaration)

6.  The plaintiff developed a painful knot on his chest and began experiencing extreme discomfort at the site of the foreign object and he notified the defendant, on or around December 2008, of said pain and discomfort at the site of the foreign object. (Plaintiff's Exhibit 3 & 4; Plaintiff's Declaration)

7.  The defendant scheduled the defendant for a General Surgery consult on January 20, 2009 and during said consult the defendant concluded that said mass was only scar tissue and he ordered an ultrasound to rule out a foreign body.[1]  (Plaintiff's Exhibit 3, 4, 5 & 6; Plaintiff's Declaration)

8.  On or around January 27, 2009 the defendant conducted an ultrasound and concluded that said mass was a foreign body ,i.e. retained Hickman Catheter Cuff. (Plaintiff's Exhibit 7 & 8; Plaintiff's

---

[1] The VA's initial diagnosis appears to be consistent with Dr. Lewis' initial diagnosis that the knot was scar tissue.  Dr. Lewis made a clinical diagnosis and did not recommend any diagnostic tests.

Declaration)[2]

9. The defendant recommended surgery if said nodule achieved no symptomatic improvement and if Mr. Samuel's desired the same. (Plaintiff's Exhibit 8; Plaintiff's Declaration)

10. On or around December 2009 the defendant admits that said foreign body was left over after the 1996 surgery and Dr. Ching-Wei D. Tzeng, MD recommends surgical removal of said foreign body. (Plaintiff's Exhibit 9)

11. The VA removed the Hickman Cuff on April 28, 2010. (Plaintiff's Exhibit 14)

### III. ADDITIONAL DISPUTED FACTS

12. The plaintiff was neither aware of his injury or the cause of his injury prior to the results of this diagnostic test. (Plaintiff's Declaration)

13. On February 6, 2009, the plaintiff discovered and was told that he had a Hickman Catheter Cuff in his body and said Cuff was for the first time described as

---

[2]This is the first and only time that Mr. Samuel was diagnosed with a Hickman Catheter Cuff in his body.

a "foreign body."  (Plaintiff's Exhibit 8; Plaintiff's Declaration)

14.  The plaintiff concurs with the recommendation for surgery and would like to have the foreign body surgically removed. (Plaintiff's Declaration)

15.  The plaintiff satisfied said procedural requirement of the Federal Tort Claims Act by duly notifying the defendants of said foreign body on or around 2008 and by filing a claim on June 24, 2009 after the ultrasound January 2009 determined that the defendant had left a foreign body in the plaintiff. (Plaintiff's Declaration; Plaintiff's Exhibits 3, 4, 7, 8 & 11)

## IV.   STANDARDS OF REVIEW

**A.   SUMMARY JUDGMENT**

The Eleventh Circuit describes the standard of review applicable to summary judgments as follows:

*We review a grant of summary judgment de novo, applying the same standard as the district court.. In reviewing a grant of summary judgment, we examine the evidence in the light most favorable to the nonmoving party.. The movant bears the burden of demonstrating that summary judgment is appropriate. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any Declarations show that*

*there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. C iv. P. 56c). A genuine issue of material fact exists when a jury could properly enter a verdict for the nonmoving party. Where the movant bears the burden of proof on an affirmative defense such as release, the movant "'must establish . . . all of the essential elements of the defense to warrant judgment in his favor.'"* Addicks Services, Inc. V. GGP-Bridgeland*, LP, 09-20155, (11th Cir. 2009)*

Based on the foregoing standard, the defendant is not entitled to summary judgment as the unrefuted facts support the plaintiff's claims and defenses.

### B.  MOTION TO DISMISS

The Eleventh Circuit outlined the following standard of review for a motion to dismiss:

*We review the district court's grant of defendants' motion to dismiss for failure to state a claim de novo as well, and we must accept all factual allegations in the complaint as true and "construe them in the light most favorable to the plaintiff."* Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir.2004)*

For following reasons, the defendant has failed to overcome the above standard and its motion to dismiss is due to be denied.

### V.  SUMMARY OF ARGUMENTS

Leaving the foreign body in the plaintiff's body deviated from the applicable standard of care and caused the plaintiff, at a minimum, pain, discomfort

and the need for surgery.

The defendant has presented absolutely no evidence that Dr. Lewis diagnosed the presence of a "foreign body" inside of the plaintiff, that she communicated to the plaintiff that the fibrous sheath was a "foreign body" such that he would be aware of who left the "foreign body" in his chest and/or that the defendant was aware that he had a "foreign body" in his chest.

## VI.   ARGUMENTS

**A. The Defendant's Care Fell Below the Applicable Standard of Care Required for the Plaintiff and caused him some injury**

The Court in *Cain v. Howorth*, 877 So.2d 566 (Ala. 2003) explains "[t]o maintain a medical-malpractice action, the plaintiff ordinarily must present expert testimony from a 'similarly situated health-care provider' as to (1) 'the appropriate standard of care,' (2) a 'deviation from that standard [of care],' and (3) 'a proximate causal connection between the [defendant's] act or omission constituting the breach and the injury sustained by the plaintiff.'"

1.  **Standard of Care/Deviation**

The Alabama Supreme Court opined in Wilson, vs. Manning, 880 So.2d 1101 (Ala. 2003) that "[a] plaintiff need not offer testimony of an expert witness in a medical-malpractice case (a) when the act or commission is in a class of cases where want of skill or lack of care is so apparent. . .as to be understood by a layman, and requires only common knowledge and experience to understand it, such as when a foreign object is left in a person's body after surgery."

In the instant case, it is undisputed that the defendant left a foreign object in the plaintiff's body.  Therefore, the defendant's conduct was a deviation from the applicable standard of care.  (see <u>Carolyn Sostre and Nelson Sostre v. Joanne</u>, 603 A.2d 809 (Del. 1992), finding that a "**tip of a broken catheter**" established an inference of medical negligence; <u>Boyd v. Chakraborty</u>, 250 Neb. 575, 583 (Neb. 1996), establishing that a **catheter tube fragment** was a foreign object which amounted to medical negligence without the need for expert testimony; <u>Abend</u>

*v. Klaudt*, 243 Ga. App. 271, 272, 531 S.E2d 722, ruling that **chemotherapy catheter device** was a foreign object; and *Steinkamp v. Caremark*, 3 S.W.3d 191 (Tx Ct. App. 1999), agreeing that a "**catheter tip**" inside a patient's body falls into the res ipsa loquitur exception and no expert testimony is required.)

## 2. Causation

The defendant has stated that said foreign body was left in the plaintiff's person after the 1996 surgery performed by the defendant.  (Plaintiff's Exhibit 9; Plaintiff's Declaration)  The defendant has acknowledged that said foreign body is "a painful knot" and has caused the plaintiff discomfort.  (Plaintiff's Exhibit 3 & 4; Plaintiff's Declaration)   Furthermore, the defendant has recommended that said foreign object should be removed by surgical incision.  (Plaintiff's Exhibit 8 & 9; Plaintiff's Declaration) As a consequence of this recommendation, the "foreign body" was removed on April 28, 2010.  (Plaintiff's Exhibit 14)  Therefore, the plaintiff has carried his burden of establishing that said deviation proximately caused the

plaintiff to suffer a pain & discomfort and to require surgery in the future.

**B. The defendant has presented absolutely no evidence that Dr. Lewis diagnosed the presence of a "foreign body" (i.e. Hickman Catheter Cuff) in Mr. Samuel's body.**

In *McCullough v. United States*, 09-13724 (FED11), the Eleventh Circuit held that "[u]nder 28 U.S.C. § 2401(b), [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." The Court goes on to say that "[i]n *United States v. Kubrick*, (1979), the Supreme Court held that a medical malpractice claim accrues "when the plaintiff knows both the existence and the cause of his injury, " . . . . It is not enough to trigger the statute of limitations that the claimant is aware of his injury if he is unaware of the act or omission which caused the injury."

Mr. Samuel did not know he had a Hickman Cuff in his body and that said cuff was considered to be a

"foreign body" until the January 2009 diagnostic test revealed the same and he was notified of said results in February 2009.  (Plaintiff's Affidavit; Plaintiff's Exhibit 8)  In fact, the VA's own doctor, Dr. Idrees, did not believe it was a Hickman Cuff until after the results of the diagnostic test. (Plaintiff's Exhibit's 6 A-C, 7 & 8)  Consistent with his disbelief that said knot was a foreign body, the VA's Dr. Idrees told Mr. Samuel that he did not need surgery.  (Plaintiff's Exhibit 6A)

    Although the defendant relies on Dr. Lewis' clinical note from Mr. Samuel's one visit, Dr. Lewis did not document any finding of a Hickman Catheter cuff.  (Plaintiff's Exhibit 13)  Furthermore, Dr. Lewis did not describe her diagnosis as a "foreign body" so as to put Mr. Samuel on notice that a negligent act had been committed.  (Plaintiff's Exhibit 13) Consequently, it could not have been reasonable for Mr. Samuel as a lay person to be on notice of something that a trained physician failed to diagnose ad document.

**C.  If this Court determines that Mr. Samuel knew or should have known about the Hickman Catheter Cuff based on Dr. Lewis' clinical note, then the Plaintiff argues that his notification and continuing treatment by the defendant for said painful knot within the two (2) year limitations periods satisfied and/or tolled the statutory notice requirement of the FTCA.**

1. <u>Statute Was Tolled Based On Erroneous & Misleading Diagnosis of VA</u>

In *Chamness By and Through Chamness v. United States*, 835 F.2d 1350, 1353 (11th Cir. 1988) the 11th Circuit acknowledged that "[r}eliance on medical opinion about the existence of an injury has also tolled the FTCA statute of limitations in this Circuit."[3]  (See also, Burgess v. United States, 744

---

[3] See, e.g., Otto v. National Institute of Health, <u>815 F.2d 985</u>, 989 (4th Cir.1987) (cause did not accrue because doctors gave plaintiff "reasonable and credible explanations for the procedure and the complications that ensued"); Nemmers v. United States, <u>795 F.2d 628</u> (7th Cir.1986) ("a 'layman's subjective belief' in a cause does not start the statute when a competent medical professional would disagree with the belief"); Nicolazzo v. United States, <u>786 F.2d 454</u> (1st Cir.1986) (merits of claim depend on whether plaintiff only learned of injury late because second doctor was competent and first was not); Raddatz v. United States, <u>750 F.2d 791</u>, 796 (9th Cir.1984) (acceptable reliance on erroneous statement that she only had side effects, not symptoms

F.2d 771, 775 (11th Cir.1984); Ballew v. A.H. Robins Co., 688 F.2d 1325, 1328 (11th Cir.1982).)

Assuming arguendo that Dr. Lewis' February 5, 2007 note placed the plaintiff on notice that he had a Hickman Cuff left in his body and that said Cuff was a "foreign body", then Dr. Idrees' January 20, 2009 statement that the knot was only scar tissue and Dr. Idrees' initial diagnosis that it was not a "foreign body", tolled the statute of limitations until VA's Dr. Gray told the plaintiff, on February 6, 2009, that the diagnostic test revealed the presence of the Hickman Cuff and that said cuff was a "foreign body." (Plaintiff's Exhibits 5 - 8; Plaintiff's Declaration)

   2. Statute Was Tolled During VA's Continuing Treatment

Although the Eleventh Circuit has not specifically adopted the "continuous treatment" defense, it generally applied it when it explained its application in several other Circuits. *McCullough v. United States*,

---

of inflammatory disease).

09-13724 (FED11)  The Court states that "[t]he statute of limitations does not begin to run on a medical malpractice claim upon a claimant's initial discovery of an injury and its cause so long as the claimant remains under the 'continuous treatment' of a physician whose negligence is alleged to have caused the injury; in such circumstances, the claim only accrues when the 'continuous treatment' ceases." _McCullough v. United States_, 09-13724 (FED11)

In this case, the VA is the party accused of negligence.  The plaintiff elected to have the VA provide a "second opinion" about the painful knot and to have them treat it.  As such, their treatment was continuing and the statute was tolled pending their treatment of the same.

3. The VA's Treatment Constituted Notice Which Satisfies FTCA

The Eleventh Circuit explains in _Martinez v. Minnis_, No. 0615919 (FED11) that "[f]or purposes of 28 U.S.C. § 2401(b), a claim is "presented" to a federal

agency when written notification is received by that agency. 28 C.F.R. § 14.2(a)"

In the instant case, the VA was notified as early as December 9, 2008 of Mr. Samuel's claim. (Plaintiff's Exhibit 3) Although it was not on a "claim form" and it did not state a specific dollar amount, there is a written record of such notice and such notice adequately placed the defendant on notice of said claim.  Therefore, said claim is timely and this notice satisfied the FTCA's administrative claim notice requirement.

## VII.  **CONCLUSION**

The plaintiff is entitled to judgment as a matter of law on the issue of liability.  The defendant's motions are due to be denied.  The plaintiff prays that this Court will enter judgment for the plaintiff on the issue of liability, allow plaintiff to proceed on the issue of damages and grant such other relief as is just and appropriate.

**ORAL ARGUMENT IS REQUESTED**

>Respectfully Submitted,
>
>s/Lee Wendell Loder
>Lee Wendell Loder
>Attorney for Plaintiff
>P.O. Box 13545
>Birmingham, AL 35202-3545
>(205)326-0566

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of ***MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S SECOND CROSS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY, ONLY, AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/DISMISS*** was served on counsel for the defendant U.S.A., Jack Hood, AUSA, by electronic filing on this the 29th day of June, 2010.

>s/Lee Wendell Loder