IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHNNY SAMUEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CV 09-RRA-2109-S |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, et., ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This is a civil action filed by the plaintiff, Johnny Samuel, against the defendants, the United States of America d/b/a Veterans Administration Hospital, Martin J. Smith, M.D., and another individual identified as "Dr. Robert, M.D." (Doc. 10.)  This action arises out of medical care administered to the plaintiff by physicians employed by the Veteran's Administration.  All claims in this action have been dismissed, as to all defendants, except for the claim brought under the Federal Tort Claims Act against the United States. (Doc. 37.)

This case comes before the court on the United States' motion to dismiss, or, in the alternative, for summary judgment.  (Doc. 33.)  On June 9, 2010, the court gave notice that the motion would be treated as a motion for summary judgment.  The court also referred the parties to its summary judgment scheduling order and ordered them to comply with its requirements.

STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, the non-moving party may not merely rest upon his pleadings, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

UNDISPUTED FACTS

1. The plaintiff filed his Complaint on October 21, 2009.

2.      In paragraphs 4 through 8 of the Complaint, the plaintiff contends that his claim for medical malpractice is based upon the care and treatment he received from the Veterans Administration Hospital ("VA") and that the plaintiff submitted to a procedure "on or around July 19, 1995" wherein a Hickman catheter was inserted into the plaintiff's chest "to administer drug therapy".  (Doc. 1.)

3.      In paragraph 9 of the Complaint, the plaintiff alleges that the VA "failed to remove the Hickman catheter cuff from the plaintiff's body after said drug therapy was completed. The plaintiff discovered the presence of said foreign instrument on or around January 17, 2009, as a result of an ultrasound performed at the VA.  As such, the VA was guilty of the following careless and negligent acts or omissions in the examination, treatment or diagnosis of the plaintiff…" (Doc. 1.)

4.      On May 27, 2010, the Defendant subpoenaed medical records from one of the Plaintiff's former physicians, General Surgeon Jacqueline B. Lewis, M.D., P.C.  In a letter from Dr. Lewis to referring physician Dr. Edwin Moyo, dated February 5, 2007, Dr. Lewis describes the plaintiff's condition as a "little nodule [that] is along the path of the old catheter site, and most likely this is a fibrous sheath remnant in the old catheter tract." (Doc. 35-2.)  In the next sentence of her letter, Dr. Lewis writes, "I have explained this to the patient and advised him that this could be excised, and he states that he wants to think about whether he wants to have this excised, and will call me should he decide to proceed with the procedure."  (Doc. 35-2).

5.      Dr. Lewis also states in her examination notes, dated February 5, 2007:

3

> The patient was advised that this could be removed as an outpatient procedure under local anesthesia with IV standby to excise the remnant. He states that he is thinking about whether or not he wants to have this removed, and states that he will call should he decide to have it removed. At this point there is no sign of infection. I have explained to him in detail my impression of what this little nodule is.

(Doc. 35-3).

6. On or around January 27, 2009, the plaintiff had an ultrasound which showed a foreign body, a retained Hickman catheter cuff. Despite his examination with Dr. Lewis in 1997, the plaintiff contends that he first learned of this foreign object in his body only after the ultrasound.

7. The defendant contends that the plaintiff knew or should have known of the foreign object as of his time of his exam by Dr. Lewis. The date of knowledge is critical, as an administrative claim must be filed within the two-year statute of limitations under the Federal Tort Claims Act, 28 U.S.C. § 2401(b). If the plaintiff was on notice as of the date Dr. Lewis examined him, this action is untimely and must be dismissed for that reason.

ANALYSIS

The only evidence offered by the United States in support of its statute-of-limitation defense are Dr. Lewis' letter and Dr. Lewis' treating notes. For purposes of this discussion, it will be assumed that the letter and the treating notes are admissible evidence.

In her letter to another physician, Dr. Lewis describes the plaintiff's condition as being a "little nodule [that] is along the path of the old catheter site, and most likely this is

a fibrous sheath remnant in the old catheter tract." These words appear to state Dr. Lewis' opinion that a fibrous part of the old catheter was still in the plaintiff's body. Dr. Lewis then continues to state in this letter that she had "explained this to the patient." It is unclear, however, what words she actually used to explain that a foreign substance had been left in the plaintiff's body. Since those words are not before the court, the court is not in a position to know whether it can be determined, as a matter of law, that it was explained to the plaintiff, in words that he could understand, that a part of the catheter may have been left in his body from the previous procedure in question. Neither do the doctor's examination notes address this discrepancy.

## CONCLUSION

Based on the foregoing, the motion to dismiss, treated as a motion for summary judgment, is due to be denied. A separate order will be entered.

DONE this 13th day of October, 2010.

/s/ Robert R. Armstrong
Robert R. Armstrong, Jr.
United States Magistrate Judge